

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-07-461-CR**

ANTHONY PASCHALL                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

------------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

------------

## OPINION

------------

### I. INTRODUCTION

Appellant Anthony Paschall appeals his conviction for felony driving while intoxicated for which he was sentenced to twenty-five years' imprisonment. Paschall filed a brief alleging thirteen points of error and later filed documents with this court in which he waived his fifth through eleventh points. In his remaining six points, Paschall argues that the trial court erred by allowing the admission of two exhibits, that the evidence introduced at trial was legally and

factually insufficient to prove that he had been convicted of the alleged jurisdictional DWI enhancement paragraphs, and that the evidence was legally and factually insufficient to support his conviction for driving while intoxicated. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A.    The State's Witnesses

Karen Morgan testified that on June 14, 2007, she was driving northbound on I-35E from Dallas to Denton and noticed an SUV moving slowly near the exit for Corinth Parkway. As soon as Morgan passed the SUV, the driver sped up, swerved, and almost hit the guardrail. Morgan noticed that after this near miss, the driver of the SUV "slowed way down" and seemed to drift into a different lane. Then, suddenly, the driver of the SUV sped up again and drove in between the left and the right lanes, such that he was not in either lane. The SUV appeared to come within four or five inches of Morgan's bumper, so she swerved a little bit because she thought it was going to hit her. At that point, Morgan decided to call 9-1-1 because she thought the driver of the SUV was going to cause an accident. Morgan stayed on the phone with the 9-1-1 operator until she reached the Loop 288 exit, and during that time, the SUV continued to drift back and then catch up. When Morgan exited at Loop 288, she told the 9-1-1 operator that the SUV continued northbound, and

2

the operator told her that the police had been called.  Morgan testified that she did not see the driver drinking; however, she said that the driver's continual slowing down and speeding up made her think that he was tired or had been drinking because the pattern was not like someone who was on a cell phone or who was putting on makeup and made a sudden, quick swerve.

Officer Brian Coast with the City of Denton Police Department testified that he was on his way to work on June 14, 2007, between 6:30 and 6:45 p.m. in his marked patrol car when he heard a fire department calling in about a reckless driver that was headed in Officer Coast's general direction.  The police dispatch immediately started to broadcast information about the reckless driver.  Three civilians had called to report the reckless driver, along with the fire truck.  The dispatch described the vehicle in question as an older model dark-colored Ford Explorer with its headlights on and said that the vehicle was heading northbound at State School Road.  Officer Coast made a u-turn and headed towards that area to intercept the vehicle.

Officer Coast spotted the vehicle—a dark Ford Explorer with its headlights on—at the intersection of Teasley Lane; Officer Coast knew that it was the vehicle in question because one of the callers had stayed on the phone with the 9-1-1 operator and continued to relay the location.  Officer Coast was southbound on Teasley Lane, so he moved into the right-turn lane in order to

3

get behind the vehicle. Officer Coast noted that the driver of the vehicle had stopped in the intersection blocking two lanes of traffic. When the light turned green, the vehicle passed Officer Coast, and Officer Coast moved in behind it. Before Officer Coast could initiate a traffic stop, the driver of the vehicle pulled into the parking lot at a 7-Eleven convenience store and parked.

Officer Coast pulled up behind the SUV and walked up to contact the driver, who was the sole occupant in the vehicle. When Officer Coast walked up, the driver was in the process of getting out of the vehicle. Officer Coast saw that the driver was fumbling and struggling with the seat belt, which was "hung up" on his arm. After the driver got out, Officer Coast noticed that the driver's shorts were unzipped. Officer Coast asked the driver for identification, and the driver provided it, revealing that he was Anthony Paschall.

Officer Coast asked Paschall why his pants were undone, and he replied that he was on his way from Dallas to Oklahoma and had an urgent need to urinate. Officer Coast asked Paschall if he had consumed anything to drink or if he had taken any medication, and Paschall said that he had not taken any medications nor consumed anything to drink. Officer Coast did not smell alcohol on Paschall.

Officer Coast decided to initiate a DWI investigation because he had noticed that Paschal's speech was slurred and that he was swaying and

4

appeared to seek out something to hold onto to steady himself while they were talking. At trial, Officer Coast explained the three field sobriety tests to the jury and stated that the horizontal gaze nystagmus (HGN) test is important in a DWI investigation because HGN is caused only by alcohol, depressants, inhalants, PCP, or a brain stem injury. During the HGN test, Officer Coast noticed that Paschall's pupils were "very constricted" and that Paschall exhibited four clues on the test, which was enough to indicate intoxication by an inhalant, a depressant, or PCP.

Officer Coast then began to give Paschall the instructions for the walk-and-turn test. Paschall, however, interrupted him and advised that he would be unable to take the test because he had undergone surgery on his left foot. Officer Coast omitted the walk-and-turn test and asked Paschall to perform the one-leg stand after he had answered affirmatively when asked if he could stand on one leg. After Paschall failed the test, he said that he had undergone operations on both feet.

Officer Coast then asked Paschall what his highest level of education was, and Paschall responded that he had earned an associate's degree. Officer Coast asked Paschall to recite the alphabet from D to Q, and Paschall said, "E, F, G, H, Q." Officer Coast asked Paschall to say the alphabet from beginning

5

to end, and Paschall said, "A, B, C, D, E, F, G, H, Q, Z." Paschall responded correctly when asked how many letters are in the alphabet.

Officer Coast moved on to the counting test and asked Paschall to count backwards from fifty-six to twenty-seven. Paschall started counting forward, so Officer Coast interrupted him and allowed him to start over. Paschall said the number fifty twice and then asked Officer Coast to repeat the instructions again. Paschall eventually started with fifty and counted backward slowly to forty-two and stopped.

At that point, Paschall asked, "Where are we going with this?" Officer Coast said that he was trying to determine Paschall's level of intoxication, and Paschall told Officer Coast to search his car. Officer Coast again asked Paschall whether he had drunk anything, and Paschall responded this time that he had consumed "one or two" that morning around 7 or 8 a.m. The search of the car did not reveal any drugs or alcohol.

Officer Coast concluded that Paschall did not have the normal use of his mental or physical faculties and that the cause for that was something other than alcohol. Officer Coast arrested Paschall and took him to the Denton County Jail. Officer Coast did not offer Paschall a breath test because that tests only for alcohol. When Officer Coast offered Paschall a blood test, he

6

chose to have his license suspended for six months rather than consent to the test.

On cross-examination, Officer Coast admitted that his observation of Paschall's driving before he pulled into the 7-Eleven did not match what had been described on the radio; Paschall had pulled into a parking space appropriately, exited his vehicle without stumbling or falling, and did not smell like alcohol. Officer Coast admitted that, prior to the start of the HGN test, the sun was in Paschall's eyes, but Officer Coast asked Paschall to move to a shaded area in order to properly perform the HGN test. Officer Coast testified that the walk-and-turn test is not a good indicator for people who are fifty or sixty, those who are more than fifty pounds overweight, and those who have physical disabilities or injuries.

Officer Coast testified that Paschall did not sway while he was standing in the Intoxilyzer room at the jail; however, he noted that Paschall had propped himself up against the wall, braced himself against the wall with his hand, and put his feet shoulder-width apart, which provided a stable platform. Officer Coast said that he performed the vertical nystagmus test, in addition to the HGN test, on Paschall and that he did not see any vertical nystagmus, which, if present, can indicate drug use or extremely high doses of alcohol.

7

Jeremy Hunter, a detention officer with the Denton Police Department, testified that he booked Paschall into the jail on June 14, 2007, and that Paschall provided an emergency contact number. When Hunter completed the medical screening on Paschall, Paschall said that he took Celexa, Trazodone, and Thorazine[1] and gave his birth date as January 13, 1956.

Melissa Giguere testified that she works in the computer support division at the sheriff's office. She said that the majority of the inmates in the Denton County Jail are housed in pods—open rooms without walls that have bunk beds lining the sides of the rooms. The pods contain telephones for use by the inmates. She oversees the recording of the phone calls placed by the inmates on the pod phones. She explained that each inmate is assigned a PIN to use when making phone calls and that a recording tells the inmate that the phone call will be recorded.

---

[1] Sam Tipton, a pharmacist, testified that Thorazine is an antipsychotic agent and is an example of a central nervous system depressant. Tipton said that Trazadone is also a central nervous system depressant. If a person was intoxicated by one of these two substances, they would exhibit slurred speech, their balance would be affected, their gait would not be normal when they walked, their pupils could be constricted, and it would be dangerous for them to drive. On cross-examination, Tipton testified that he would need to know the dosage and the frequency of the dosage, the time of the last dose, and whether food had been consumed in order to gauge whether the person was intoxicated by these drugs.

She searched the system for all phone calls made using Paschall's PIN and transferred them to a CD. She noted that the phone calls at issue were made to a number similar to Paschall's emergency contact number.

The jury heard the recording of a phone call made using Paschall's PIN. During the phone call, Paschall said "they" were trying to use a charge of DWI to enhance and turn the current DWI into a felony.[2] Paschall said that "they" have to find three DWIs where the pictures and fingerprints match up and that "they" never fingerprinted or photographed him on the two DWIs he committed in Brownsville.

Before the State rested its case in chief, the trial court took judicial notice, upon the State's request, that Brownsville is the county seat of Cameron County, Texas. The trial court also admitted, over defense's objection, State's Exhibit 5 and State's Exhibit 6, which contained judgments for two prior DWI convictions for Anthony Dean Paschall.

### B. Paschall's Witness

Paschall called Captain Douglas Sanders to testify. Sanders, the Denton County Correctional Facility Health Director who oversees the access and

---

[2] Although the State in its brief indicates that Paschall identified his attorney as Daniel Peugh, the record before us—State's Exhibit 3 from 01:22-01:57—does not indicate that the part of the recording containing that information was played for the jury.

delivery of mental and medical healthcare for adults and juveniles, testified that Paschall was treated for problems with a disk in his back while he was in the Denton County Jail. Sanders testified that Paschall's medical records revealed that he has a degenerative back disease and a congenital disk fusion and that his course of care included anti-inflammatories and muscle relaxants. Sanders testified that Paschall's back problems could affect his balance and coordination. Sanders said that the mental health authorities had listed Paschall as bipolar.

On cross-examination, Sanders testified that the medical records showed that Paschall had undergone a left Achilles reconstruction in 1996 but did not reference an injury to the right foot. Sanders testified that during the year that Paschall had been in jail, he had not exhibited any problem "getting around." Sanders said that the medical records demonstrated that Paschall was an alcoholic and was addicted to or an abuser of prescription drugs. The records contained notations that Paschall could not have any more refills on drugs because he was overtaking them and constantly trying to get more prescription drugs. The records revealed that Paschall was taking Klonopin, a drug in the benzodiazepine family that has a synergistic effect with alcohol. On redirect, Sanders testified that the medical records regarding the benzodiazepine drugs

10

dated back to 2005 and 2006 and that the prescribing doctors took steps to change his medications to get him off those drugs.

## C.  Outcome of Trial

After hearing the above testimony, the jury found Paschall guilty of the felony offense of driving while intoxicated as alleged in the indictment and assessed his punishment at twenty-five years' confinement.  The trial court accepted the jury's verdict and sentenced Paschall in accordance with the jury's recommendation.  This appeal followed.

### III.  STANDARDS OF REVIEW

In his first four points, Paschall challenges both the admission of the exhibits, as well as the sufficiency of the evidence to prove that he was the same person who was convicted of the prior DWIs shown in the exhibits.  In his twelfth and thirteenth points, Paschall challenges the sufficiency of the evidence to prove that he was intoxicated at the time he was arrested on the 2007 DWI charge.  We will therefore apply the abuse of discretion standard of review and the legal and factual sufficiency standards of review set forth below where they are applicable.

## A.  Abuse of Discretion

We review a trial court's decision to admit evidence under an abuse of discretion standard.  *Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App.

11

1996), *cert. denied*, 520 U.S. 1200 (1997); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). As long as the trial court's ruling falls within the zone of reasonable disagreement, we will affirm its decision. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). The trial court's decision must be reasonable in view of all the relevant facts. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

### B.    Legal Sufficiency

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at

319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Gollihar v. State*, 46

13

S.W.3d 243, 253 (Tex. Crim. App. 2001); *Malik,* 953 S.W.2d at 240. However, we may not affirm a conviction based on legal or factual grounds that were not submitted to the jury. *Malik*, 953 S.W.2d at 238 n.3. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the charging instrument. *See Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13.

### C. Factual Sufficiency

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Neal v. State*, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 1037 (2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417. To reverse

14

under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the factfinder's. *Johnson v. State*, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the

15

weight and credibility of the evidence." *Id*. at 9. Our deference in this regard safeguards the defendant's right to a trial by jury. *Lancon,* 253 S.W.3d at 704.

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). Moreover, an opinion reversing and remanding on factual insufficiency grounds must detail all the evidence and clearly state why the finding in question is factually insufficient and under which ground. *Goodman v. State*, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001); *Johnson*, 23 S.W.3d at 7.

## IV. EXHIBITS PROPERLY ADMITTED

In his first through fourth points, Paschall contends that the trial court erred by allowing the admission of State's Exhibits 5 and 6—judgments and documents related to two prior DWI convictions—because they were not properly connected to him, were irrelevant, and were more prejudicial than probative and because the evidence was legally and factually insufficient to prove that he had been convicted of the alleged jurisdictional DWI enhancement paragraphs. The State responds that it provided sufficient proof that Paschall was the same person identified in the exhibits, that the exhibits were relevant because Paschall contested that he was the person named in the prior convictions, and that the evidence introduced at trial was legally and factually

16

sufficient to prove that Paschall had been convicted of the DWIs shown on the convictions that were used to enhance jurisdiction.

DWI is a conduct-oriented offense; it does not require proof of a culpable mental state. *Nelson v. State*, 149 S.W.3d 206, 210 (Tex. App.—Fort Worth 2004, no pet.). A person commits the crime of DWI if he "is intoxicated while operating a motor vehicle." Tex. Penal Code Ann. § 49.04(a) (Vernon 2003). The elements of that crime are (1) the defendant, (2) operated, (3) a motor vehicle, (4) while intoxicated, and (5) on or about the date alleged in the State's charging instrument. *Id.* In a felony DWI case, the State must prove, in addition to the aforementioned elements of that primary offense, that the accused has twice previously, and sequentially, been convicted of DWI. *Id.* § 49.09(b)(2).

To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). No specific document or mode of proof is required to prove these two elements. *Id.* While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means, the State may prove both of these elements in a number of ways, including documentary proof (such as a judgment) that contains sufficient

17

information to establish both the existence of a prior conviction and the defendant's identity as the person convicted. *Id.* at 921–22. Any type of evidence, documentary or testimonial, might suffice. *Id.* at 922. Additionally, the State may establish a prior conviction by admitting certified copies of a judgment and a sentence and authenticated copies of the Texas Department of Corrections (n/k/a Texas Department of Criminal Justice—Institutional Division) records, including fingerprints, supported by expert testimony identifying them as identical with known prints of the defendant. *Beck v. State*, 719 S.W.2d 205, 209 (Tex. Crim. App. 1986). The factfinder looks at the totality of the evidence to determine whether the State proved the prior conviction beyond a reasonable doubt. *Flowers*, 220 S.W.3d at 923.

Here, State's Exhibit 5 contains certified copies of documents, including a "Judgment On Plea Of Guilty Or No Contest" in Cause No. 01-CCR-3615-C, showing that Anthony Dean Paschall, I.D. #126409, was found guilty of the offense of driving while intoxicated on April 22, 2001, by the County Court at Law No. 3 in Cameron County. The judgment contains a faded right thumb print and has conditions of community supervision attached, stating that the punishment will run concurrent with Cause No. 01-CCR-3810-C. State's Exhibit 6 contains certified copies of documents, including a "Judgment On Plea Of Guilty Or No Contest" in Cause No. 01-CCR-3810-C, showing that Anthony

18

Dean Paschall, I.D. #126409, was found guilty of the offense of driving while intoxicated on January 3, 2001, by the County Court at Law No. 3 in Cameron County. The judgment contains a faded right thumb print. Included with State's Exhibit 6 is a document entitled "State's Motion To Revoke Probated Sentence," which lists Paschall's date of birth as January 13, 1956. Another document included with State's Exhibit 6 is "Order Setting Hearing And Ordering Arrest" and is dated March 17, 2003, which gives the following physical description of Paschall:

| | | | | |
|-----|------|---|------------|----------|
| AGE: | 47 | | HAIR: | Brown |
| RACE: | Anglo | | HEIGHT: | 5'9" |
| SEX: | Male | | WEIGHT: | 160 lbs. |
| EYES: | Blue | | COMPLEXION: | Light |

The section with "OTHER IDENTIFYING MARKS TATTOOS/SCARS" is blank. The jury in this case heard Hunter, the book-in officer, testify that Paschall's birth date is January 13, 1956. State's Exhibit 5 and State's Exhibit 6, which include the same name and ID number and show punishments in each cause will run concurrently, are therefore sufficiently connected to one another. The jury, moreover, was able to view Paschall during the trial and compare him to the description given in State's Exhibit 6, and to find that he appeared to be the same person.

And, despite Paschall's objection that the judgments "haven't been properly tied to [him]," the jury heard a tape of a phone call made from the jail using Paschall's PIN number in which the caller, presumably Paschall, admitted he had been convicted of two DWIs in Brownsville. The trial court, moreover, took judicial notice that Brownsville is the county seat of Cameron County.

On this collective evidence, we believe that the jury could have properly concluded, beyond a reasonable doubt, that the Anthony Paschall then on trial was the same "Anthony Dean Paschall" who had been convicted of DWI in Cameron County cause numbers 01-CCR-3615-C and 01-CCR-3810-C. *See Dorsett v. State*, 396 S.W.2d 115, 116 (Tex. Crim. App. 1965) (stating that evidence was held sufficient when the jury had the opportunity to observe the accused and determine by comparison with the description in the record whether he is the same person previously convicted); *Ruffin v. State*, No. 01-97-00929-CR, 1999 WL 274998, at *2 (Tex. App.—Houston [1st Dist.] May 6, 1999, pet. ref'd) (not designated for publication) (holding that sufficient evidence existed to establish that appellant was the same individual convicted in cause number 35374 because the jury had an opportunity to observe appellant in the courtroom and compare the description in exhibit to his physical appearance). Moreover, because the State had to prove that Paschall had two prior DWI convictions, State's Exhibit 5 and State's Exhibit 6 were relevant to

20

establish an element of the offense of felony DWI and to demonstrate that Paschall was the same person as the person convicted of the prior two DWIs. *Cf. Thorn v. State*, 961 S.W.2d 12, 19 (Tex. App.—Dallas 1996, pet. ref'd) (holding that records of appellant's felony convictions were relevant to establish an element of the offense of perjury and to demonstrate that appellant's convictions were final). As such, we hold that the value of these records was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury when Paschall had not stipulated to the prior convictions. *See* Tex. R. Evid. 403; *see generally Tamez v. State*, 11 S.W.3d 198, 202–03 (Tex. Crim. App. 2000) (stating that it is an abuse of discretion to admit records when an admission is available); *cf. Thorn*, 961 S.W.2d at 19 (holding that probative value of prior convictions in perjury case was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury when prior felony convictions were relevant to establish element of offense for which appellant was on trial).

Accordingly, we conclude that the evidence, as measured against the applicable hypothetically correct jury charge, showed (1) that the two Cameron County convictions existed and (2) that the person named Paschall then on trial was linked to those two Cameron County convictions. Thus, we hold that the evidence was legally and factually sufficient to show that Paschall had been

previously convicted of the two prior DWI offenses that occurred in Cameron County as alleged in the indictment. *See Reese v. State*, 273 S.W.3d 344, 347–48 (Tex. App.—Texarkana 2008, no pet.) (holding that evidence was legally and factually sufficient to support finding that defendant was same person convicted of two prior DWIs even though judgment for second prior offense listed only offender's name with no further identifying identification; record included community supervision data sheet from second DWI offense, listing identifying information, and a copy of first DWI conviction); *see also Flowers*, 220 S.W.3d at 923–25 (holding that evidence was legally sufficient to prove enhancement paragraph beyond a reasonable doubt when trial court had certified copy of appellant's driver's license record and computer printout from county to prove appellant's prior DWI conviction). We overrule Paschall's first through fourth points.

## V. SUFFICIENT EVIDENCE TO SUPPORT DWI CONVICTION

In his twelfth and thirteenth points, Paschall contends that the evidence is legally and factually insufficient to support his conviction for driving while intoxicated. Specifically, Paschall argues that the State failed to prove that he was intoxicated by the introduction into his system of alcohol, a controlled substance, a drug, or a combination of two or more of the previous substances, or any other substance. The State responds that direct evidence proved

22

Paschall's loss of normal use of his mental of physical faculties and that circumstantial evidence proved Paschall's loss of normal use of his mental or physical faculties was by reason of his ingestion of a controlled substance, a dangerous drug, or another substance.

The Texas Penal Code defines "intoxicated" as

(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body;[3] or

(B) having an alcohol concentration of 0.08 or more.

Tex. Penal Code Ann. § 49.01(2) (Vernon 2003). The fact that a person does not have the normal use of his mental or physical faculties by reason of introduction of a controlled substance or a dangerous drug into his body may be proved by circumstantial evidence. *See Smithhart v. State*, 503 S.W.2d 283, 284 (Tex. Crim. App. 1973).[4]

In *Payne v. State*, the jury heard officers describe appellant's demeanor and performance on the sobriety tests, including that appellant seemed drowsy,

---

[3] This definition was included within the indictment, and the application paragraph of the jury charge tracked the indictment.

[4] In *Smithhart*, the Texas Court of Criminal Appeals placed some limits on the admissibility of non-expert testimony on whether a person is under the influence of drugs; but the Court explicitly held that the State could prove this element by circumstantial evidence. *See id.*

had poor balance, and mumbled. No. 12-02-00312-CR, 2003 WL 22047776, at *8 (Tex. App.—Tyler Aug. 29, 2003, pet. ref'd) (mem. op., not designated for publication). A doctor testified that Soma and Lortab, which appellant admitted taking on the morning of the accident, caused drowsiness. *Id*. The jury thus had before it both direct evidence, showing that appellant had lost the normal use of his mental or physical faculties, and circumstantial evidence of appellant's intoxication by reason of the introduction of one or more substances into her body. *Id.*

Here, concerning the loss-of-normal-use-of-mental-or-physical-faculties prong of "intoxicated," the jury had before it the eyewitness's testimony regarding Paschall's driving, Officer Coast's description of Paschall's performance on the field sobriety tests, the video of Paschall performing the field sobriety tests, Detective Fisher's testimony that HGN is an accurate measure of intoxication, and Officer Coast's conclusion that Paschall did not have the normal use of his mental or physical faculties. This direct evidence was legally sufficient for the jury to form a firm conviction or belief that Paschall did not have the normal use of his mental or physical faculties. *See Compton v. State*, 120 S.W.3d 375, 380 (Tex. App.—Texarkana 2003, pet. ref'd) (holding evidence legally and factually sufficient to support DWI conviction when jury had before it State Trooper's testimony surrounding the stop and viewed the video recording of appellant's performance on field

24

sobriety tests); *Rumage v. State*, No. 12-02-00190-CR, 2003 WL 21999347, at *3–4 (Tex. App.—Tyler Aug. 20, 2003, no pet.) (mem. op., not designated for publication) (holding evidence legally and factually sufficient to support DWI conviction after reviewing testimony of arresting officer, driver of other vehicle, and appellant and watching video of appellant as he performed field sobriety tests).[5]

Concerning the by-reason-of-introduction-of-a-controlled-substance-or-dangerous-drug-or-other-substance-into-his-body prong of "intoxicated," the State offered circumstantial evidence. Specifically, the State offered and the trial court admitted (1) pharmacist Sam Tipton's testimony that the two drugs that Paschall listed on his medical intake form as drugs he was taking—Thorazine and Trazadone—are central nervous system depressants that would cause a person intoxicated by use of the drugs to exhibit slurred speech, affected balance, abnormal gait, and constricted pupils and that it would be dangerous for a person so intoxicated to drive, and (2) Officer Coast's testimony that Paschall exhibited slurred speech, swaying, and constricted pupils at the 7-Eleven and that he, Officer Coast, did not smell alcohol on

---

[5] The dissent would require direct evidence of ingestion of a specific drug. The penal code and the jury charge here, however, simply require evidence that appellant's loss of normal use was by reason of the introduction of "a drug, a dangerous drug, a combination of two or more of those substances, or any other substance." *See* Tex. Penal Code Ann. § 49.01(2).

25

Paschall. This evidence was legally sufficient to permit the jury to infer that Paschall's loss of the normal use of his mental or physical faculties was by reason of the introduction of "a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance" into his body.[6] *See Payne*, 2003 WL 22047776, at *8. We hold that a rational trier of fact could have found the essential elements of DWI beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778; *see also Guyett v. State*, No. 11-08-00003-CR, 2008 WL 3846221, at *1, 3 (Tex. App.—Eastland Aug. 14, 2008, no pet.) (mem. op., not designated for publication) (holding evidence legally sufficient to support DWI conviction based on intoxication by prescription drugs); *Gray v. State*, No. 05-04-01269-CR, 2005 WL 1670715, at *6–7 (Tex. App.—Dallas July 19, 2005, no pet.) (not designated for publication) (same).

With regard to the factual sufficiency of the evidence, we are required to review all the evidence in a neutral light. The record here contains evidence

---

[6] We do not hold, as the dissent contends, that merely possessing a prescription for a drug deprives a person of the normal use of his mental or physical faculties. Instead, the State must prove, as it did here: first, that appellant lost the normal use of his mental or physical faculties, and second, that appellant's loss of his mental or physical faculties was by reason of the introduction of "any . . . substance" into his body. *See* Tex. Penal Code Ann. § 49.01(2). Contrary to the dissent's position, a person may drive after taking a prescription medication so long as that person has not lost the normal use of his mental or physical faculties by reason of introduction of the prescription drug into his body.

26

that no alcohol or drugs were found in Paschall's car; that there were no breath or blood tests; and that Paschall's cognitive problems, injuries, and degenerative disk disease could have affected his performance on the field sobriety tests. The record also contains no evidence of an alternative explanation—such as sleeplessness, emotional trauma, etc.—for Paschall's erratic driving and failure of sobriety tests. Applying the standard of review to all the evidence, after listening to the testimony surrounding Paschall's stop and viewing the video recording of his performance on the field sobriety tests, the jury chose, as it was entitled to do, to give less weight to Paschall's physiological explanations for his poor performance on the field sobriety tests and chose to give more weight to the eyewitness's and officer's accounts of the events. Deferring to the jury's role as "the sole judge of the weight and credibility given to witness testimony" and viewing all the evidence in a neutral light, favoring neither party, we therefore hold that the evidence supporting Paschall's felony DWI conviction, although legally sufficient, is not so weak that the factfinder's determination is clearly wrong and manifestly unjust and that conflicting evidence does not so greatly outweigh the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *See Neal,* 256 S.W.3d at 275; *Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417; *see also Guyett*, 2008 WL 3846221, at *1, 3 (holding evidence factually sufficient to support DWI conviction, despite testimony that appellant had

27

undergone three brain surgeries and spinal surgery); *Gray*, 2005 WL 1670715, at *7 (holding evidence factually sufficient, despite testimony that tie rod on appellant's car broke and caused her to lose control, because jury was free to believe officer's accounts of field sobriety tests and video of intoxilyzer room testing); *Payne*, 2003 WL 22047776, at *9 (holding evidence factually sufficient, despite evidence that appellant was ill and not intoxicated on the morning of the accident, because jury was free to believe eyewitnesses' and officers' accounts of what they saw). We overrule Paschall's twelfth and thirteenth points.

## VI. CONCLUSION

Having overruled Paschall's first, second, third, fourth, twelfth, and thirteenth points,[7] we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

DAUPHINOT, J. filed a dissenting opinion.

PUBLISH

DELIVERED: April 2, 2009

---

[7] As noted in the opening paragraph of this opinion, Paschall waived his fifth through eleventh points. We therefore need not address them. *See* Tex. R. App. P. 47.1.

28



## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-07-461-CR**

ANTHONY PASCHALL                                                      APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

------------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

------------

## DISSENTING OPINION

------------

I must respectfully dissent from the majority's thorough and detailed opinion because there is no evidence that Appellant was intoxicated by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of any two or more of these substances.[1] The jury heard evidence that Appellant's speech was slurred, his pupils were constricted, and

------------

[1] *See* Tex. Penal Code Ann. § 49.01(2)(A) (Vernon 2003).

he could not or would not perform the field sobriety tests. His driving indicated a lack of the normal use of his mental or physical faculties. The testing officer said the horizontal gaze nystagmus (HGN) test revealed four clues of intoxication or brain stem injury, but there was no odor of alcohol. The police did not seek to administer a breathalyzer test because there was no odor of alcohol.

The police concluded that Appellant did not have the normal use of his mental or physical faculties, but the cause was "something other than alcohol."

Intoxication is a term that is defined in the penal code.[2] Intoxication by the introduction of alcohol and/or certain drugs is an essential element of the offense of driving while intoxicated (DWI).[3] Intoxication, then, must be proved. It is not sufficient to prove just that a person "wasn't acting right." It is not enough to conclude that he must have taken something, but we know it was not alcohol.

Here, Appellant did not consent to a blood test. The officers could have sought a warrant to allow them to draw blood. They did not. They found no drugs on Appellant or in his vehicle. He did not admit to taking any drug or medication, nor did anyone testify that he had taken drugs, prescribed or

---

[2] *See id.*

[3] *See id.* §§ 49.01(2)(A), 49.04(a).

2

otherwise. His jail medical records showed prescriptions for certain drugs, but the jury heard no evidence that he had taken them the day he was arrested.

The majority relies on cases holding that the officer's opinion of intoxication is sufficient. In those cases, however, there was evidence that the defendant had ingested alcohol, drugs, or both. In *Compton v. State*, the defendant "smelled of alcohol; had slurred speech; admitted drinking two beers; [and] had a cold, open bottle of beer in his truck . . . ."[4]

The other cases the majority relies on are

- *Rumage v. State*, an unpublished case in which "[t]he officer testified he initially smelled alcohol on [Rumage's] breath and noticed his speech was slurred. The driver of the other vehicle told the officer that she had seen [Rumage] at the restaurant where she worked drinking an alcoholic beverage shortly before the wreck";[5]

- *Payne v. State*, an unpublished case in which Payne admitted drinking a 16-oz. beer around 7:00 a.m., about five hours before the accident, taking Lortab and Soma the morning of the accident, and taking another Lortab before lunch.[6] She ate a sandwich at 11:00 and then left work. The accident occurred on her way home

---

[4] *Compton v. State*, 120 S.W.3d 375, 379 (Tex. App.—Texarkana 2003, pet. ref'd).

[5] *Rumage v. State*, No. 12-02-00190-CR, 2003 WL 21999347, at *2 (Tex. App.—Tyler Aug. 20, 2003, no pet.) (mem. op., not designated for publication).

[6] *Payne v. State*, No. 12-02-00312-CR, 2003 WL 22047776, at *5–6 (Tex. App.—Tyler Aug. 29, pet. ref'd) (mem. op., not designated for publication).

3

from work.  She was incoherent and did not know where she was when the police interviewed her at the accident scene;[7]

- *Guyette v. State*, an unpublished case in which Guyette admitted that she was taking prescription medication as prescribed by her doctor, acknowledged that some of her medication was accompanied by a warning that it might cause drowsiness and affect the ability to drive, and stated that she had taken the drugs for years and was "acclimated" to them and that neither her doctors nor DPS had told her that she could not drive;[8] and

- *Gray v. State*, an unpublished case in which Gray admitted that she had taken hydrocodone the night before, and the officer testified that hydrocodone is a controlled substance and that he found an empty prescription bottle for it in the car and as well as loose pills, an indication that she had taken the drug more recently than the night before.[9]

In all the cases relied on by the majority, there was evidence that the defendant drank alcohol and/or took the drugs near the time of the arrest, or, as in *Gray*, evidence of the presence of drugs or alcohol in the vehicle driven by the defendant.  In the case now before this court, Appellant admitted to one or two drinks at 7:00 or 8:00 a.m. the morning of his arrest; he was not pulled over until around 6:30 or 6:45 p.m., more than eleven hours later, and the

---

[7] *Id.*

[8] *Guyett v. State*, No. 11-08-00003-CR, 2008 WL 3846221, at *2 (Tex. App.—Eastland Aug. 14, 2008, no pet.) (mem. op., not designated for publication).

[9] *Gray v. State*, No. 05-04-01269-CR, 2005 WL 1670715, at *6 (Tex. App.—Dallas July 19, 2005, no pet.) (not designated for publication).

police officers were convinced that he had not been drinking, so convinced that they did not offer him a breath test. He did not testify that he had taken any drugs, no drugs were found in his vehicle, and no blood test was performed.

The majority holds that the pharmacist's testimony regarding the effect of drugs Appellant listed on his jail intake form as drugs he was taking, combined with the arresting officer's description of Appellant's swaying, slurred speech, and constricted pupils, as well as the absence of the odor of alcohol, was sufficient evidence to support the jury's verdict. Respectfully, I cannot agree.

There is no presumption of intoxication. Slurred speech, constricted pupils, and swaying may indicate intoxication, but such evidence only goes to the element of lack of normal use. It is not, in and of itself, proof of introduction into the body of a drug or controlled substance or alcohol, a necessary element of intoxication that the State must prove.[10] If, rather than having the actual drug, having a prescription for a drug which, if used or abused, deprives a person of the normal use of his mental or physical faculties is sufficient to prove intoxication, no one who has been prescribed a sleeping pill, a muscle relaxant, cough medicine, or pain medication could ever drive

---

[10] Tex. Penal Code Ann. §§ 49.01(2)(A), 49.04(a).

without violating the DWI statute. The State must prove more than the mere opportunity to ingest the medication.

The legislature has balanced the interests of society and law enforcement against the due process rights of a defendant by providing the State the ability to draw and test a defendant's blood. The police, although candid in admitting that there was no odor of alcohol despite Appellant's history of alcohol abuse and thorough in searching out Appellant's medical records to trace his medical history, provided the State with no more than a guess as to the reason for Appellant's lack of coordination and slurred speech. I would hold that a guess is not sufficient evidence to support a felony conviction.

For these reasons, I respectfully dissent from the majority's opinion upholding the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED: April 2, 2009

6