# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00526-CR

**Robert John Markwell, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 391ST DISTRICT COURT OF TOM GREEN COUNTY
### NO. D-18-0851-SA, THE HONORABLE CARMEN DUSEK, JUDGE PRESIDING

## O P I N I O N

Robert John Markwell, Jr. was convicted by a jury of the second-degree felony of burglary of a habitation and assessed punishment, enhanced by two prior felony convictions, at fifty years' imprisonment. *See* Tex. Penal Code § 30.02(c)(2), *see also id.* § 12.42(d). On appeal, Markwell contends that the district court's charge submitted during the guilt-innocence phase of trial and the charge on punishment improperly commented on the weight of the evidence, and that the district court abused its discretion by admitting certain fingerprint evidence over his objection. We will affirm the judgment of conviction.

## BACKGROUND

During trial, the jury heard evidence that Joann Lancaster had a Jeep Patriot for sale and that Markwell went to her residence to see the Jeep July 26, 2018. Lancaster allowed Markwell to put the key in the ignition of the Jeep to check its mileage and afterward, she got the

key back from him. Lancaster did not know Markwell, and he had never been inside her house. No other prospective buyers came to look at the Jeep that day.

The next morning, Lancaster noticed that her Jeep was gone and that its key was missing. Lancaster testified that she kept the key to the Jeep in a little dish above a bread box in her dining room. The dish with the key was easily visible when walking into that portion of the house. She had not given anyone permission on that day, or the day before, to enter her home, take the key to the Jeep, or drive it away. She reported the theft to police.

A July 26, 2018 video recording from the doorbell-camera security system at Lancaster's residence was admitted into evidence during trial. The video of that evening showed Markwell opening a screen door and then entering through the front door. Markwell's face and a distinctive tattoo on his right forearm were visible on the video. Lancaster, who is hearing impaired, did not know that Markwell had entered her house.

Police found the abandoned Jeep—now missing its rearview mirror and stereo system—within weeks after Lancaster had reported it stolen. They arrested Markwell on an unrelated outstanding warrant and in his backpack found the key to Lancaster's stolen Jeep, the owner's manual for the Jeep, and an inspection certificate with the Jeep's VIN number.

After the parties concluded their presentations of evidence, the district court held a charge conference. Defense counsel stated that he had "[n]o objections" to the court's charge, which was submitted to the jury. The jury convicted Markwell of burglary of a habitation as alleged in his indictment, and the case proceeded to punishment.

During the punishment phase, the State offered certified copies of the judgment and sentence for two felony convictions, along with authenticated copies of Texas Department of Corrections records for those convictions—including photographs and fingerprints—as evidence

2

supporting the enhancement paragraphs in Markwell's indictment. A crime-scene technician with the police department, who had compared "a couple of hundred" fingerprints and had six years' experience in taking fingerprints, testified that the fingerprints on both judgments matched Markwell's known "ten-print card," "down to all patterns on the fingers as well as some of the scars that he has on two of the fingers." She testified that although her office standard is only eight points of comparison, she requires "close to fifteen" points to make a "hit." Based on her comparison of the fingerprints and her review of the judgments, the technician testified that Markwell, whose fingerprints she took in the courtroom on the ten-print card, is the same person who was convicted in those two judgments.

Defense counsel objected to the fingerprint evidence because the technician had not testified to the error rate, science, or validity of fingerprints. He argued that "the science backing up fingerprints is weak" and unsubstantiated and stated that while the technician found "all fingerprints are unique in her experience," that experience was limited and not scientifically viable. The State responded that the technician was qualified as an expert by her training and experience and that "the science has been recognized as sound for close to a hundred years now." The district court overruled the objections and admitted the judgments and the ten-print card.

During the charge conference, defense counsel stated that there were "no objections" to the court's charge on punishment, which was submitted to the jury. After finding both enhancement paragraphs to be true, the jury assessed Markwell's punishment at fifty years' imprisonment. The district court rendered judgment in accordance with the verdict. Markwell filed a motion for new trial that was overruled by operation of law. This appeal followed.

## DISCUSSION

**Jury-Charge Error Complaints**

Markwell contends that the district court violated article 36.14 of the Texas Code of Criminal Procedure by improperly commenting on the weight of the evidence in the jury charge submitted during the guilt-innocence phase of trial and in the charge on punishment. *See* Tex. Code Crim. Proc. art. 36.14. Article 36.14, in relevant part, states that the trial-court judge shall deliver to the jury a written charge "not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." *Id.* Markwell complains that he was "egregiously harmed" by the inclusion of these "nonstatutory" instructions:

> As the jurors, you review the evidence and determine the facts and what they prove. You judge the believability of the witnesses and what weight to give their testimony. In judging the facts and the believability of the witnesses you must apply the laws provided in these instructions.
>
> . . . .
>
> While you should consider only the evidence, you are permitted to draw reasonable inferences from the testimony and exhibits that are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the evidence.

However, both these instructions are correct statements of the law. *See Carter v. State*, 620 S.W.3d 147, 149 (Tex. Crim. App. 2021) (noting that jury, as trier of fact, is responsible for fairly resolving conflicts in testimony, weighing evidence, and drawing reasonable inferences from basic facts to ultimate facts); *cf. Crayton v. State*, 485 S.W.3d 488,

4

495 (Tex. App.—Texarkana 2016, no pet.) (quoting instruction that trial court would have given to jury, which applied to trial court as fact finder in bench trial, stating that fact finder is "permitted to draw inferences from the testimony and exhibits that are justified in the light of common experience" and "may make deductions and reach conclusions that reason and common sense lead [the fact finder] to draw from the facts that have been established by the evidence"). The instructions that the district court provided here track the instructions to the jury on "General Principles" set forth in the Texas Pattern Jury Charges. *See* Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Criminal Pattern Jury Charges: Instruction* CPJC 2.1 (2018); *id. Instruction--Punishment--General* CPJC 12.3. These pattern jury charges incorporate relevant statutory authority from the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. arts. 36.13 ("Unless otherwise provided in this Code, the jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby."), 38.04 (providing, in relevant part, that "[t]he jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony"). We are unpersuaded by Markwell's contention that these instructions constituted improper comments on the weight of the evidence that egregiously harmed him. Accordingly, we overrule his first and third issues.

**Admission of Fingerprint Evidence During Punishment**

Relying heavily on research studies outside the record, Markwell contends that the district court erred by admitting fingerprint evidence during punishment to support the prior-felony-conviction allegations. A prior conviction may be proved with certified copies of a judgment and a sentence, and authenticated copies of Texas Department of Corrections records including fingerprints, supported by expert testimony identifying them as identical with the

5

defendant's known fingerprints. *Beck v. State*, 719 S.W.2d 205, 209 (Tex. Crim. App. 1986); *Paschall v. State*, 285 S.W.3d 166, 174-75 (Tex. App.—Fort Worth 2009, pet. ref'd); *see also Vargas v. State*, No. 03-08-00508-CR, 2010 Tex. App. LEXIS 2757, at *3-4 (Tex. App.—Austin Apr. 15, 2010, no pet.) (mem. op., not designated for publication) (noting that State may link prior convictions to defendant by various methods, including expert testimony identifying fingerprints from prior convictions as identical with defendant's known fingerprints and "matching a photograph of the defendant in a [pen pack] . . . to the defendant at trial"). "A trial court's ruling on the admissibility of scientific expert testimony is reviewed under an abuse of discretion standard." *Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005).

Here, Markwell alleges that "research has shown there is an inadequate scientific foundation for a latent print examiner to draw a conclusion about whether fingerprints were made by a given individual." But Markwell points to studies challenging the reliability of fingerprint evidence that were not admitted during the trial. Because those studies are outside the record, we may not consider them on appeal. *See* Tex. R. App. P. 34.1 (stating that "[t]he appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record"); *Leza v. State*, 351 S.W.3d 344, 362 n.78 (Tex. Crim. App. 2011) (noting that appellate court may not consider factual assertions that are outside record); *see also Webster v. State*, No. 01-16-00163-CR, 2017 Tex. App. LEXIS 5991, at *13 (Tex. App.—Houston [1st Dist.] June 29, 2017, no pet.) (mem. op., not designated for publication) (noting that defendant's attack on reliability of certain evidence was based on articles from journals, online newspapers, and other sources outside record that could not be considered on direct appeal).

Further, we note that the crime-scene technician testified that she requires "close to fifteen" points of comparison to make a "hit"—greater than the standard eight points—and

6

that the fingerprints on both judgments matched Markwell's known ten-print card, "down to all patterns on the fingers as well as some of the scars that he has on two of the fingers." The Court of Criminal Appeals has determined that "fingerprint-comparison testimony is admissible under Texas Rule of Evidence 702 because it is reliable and it assists the trier of fact in its task of determining whether a latent fingerprint is that of a particular person." *Russeau*, 171 S.W.3d at 883; *see* Tex. R. Evid. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."). Given that authority and the technician's testimony during trial, we disagree with Markwell's contention that admission of the fingerprint evidence constituted an abuse of the district court's discretion. We overrule Markwell's second issue.

## CONCLUSION

We affirm the district court's judgment of conviction.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Baker and Kelly

Affirmed

Filed:   January 27, 2022

Publish