**Opinion issued December 21, 2023**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-22-00249-CR**

**NO. 01-22-00250-CR**

———————————

**JOEY HARPER, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

---

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1635582 & 1635583**

---

**MEMORANDUM OPINION**

Appellant Joey Harper appeals his convictions for aggravated assault with a deadly weapon and felon in possession of a weapon. *See* TEX. PENAL CODE §§ 22.02(a)(2), 46.04(a). A jury found him guilty of both crimes. After Harper

pleaded not true to a sentencing enhancement, the jury found it true and sentenced him to 24.5 and 10 years' imprisonment, respectively. The trial court ordered the sentences to run concurrently. On appeal, Harper contends that the evidence was insufficient to support the jury's finding regarding the sentencing enhancement. We affirm.

## Background

This case concerns a shooting in the parking lot of a 24 Hour Fitness. Harper, who uses a wheelchair after the loss of his legs, was a member of the gym. On Father's Day in 2019, Harper went to the gym's childcare and attempted to take a young girl away with him. At the time, he was on the phone with the girl's mother. He told the employee monitoring the childcare area that the girl's mother gave permission for him to retrieve her daughter. The childcare worker would not allow him to take the girl. She told him that the gym's policy is that the person who brings a child must also pick the child up, and she enforced the policy. While she was speaking with Harper, the child's father, Nehemias Olmedo, returned to get her. Olmedo and his daughter left the childcare area and left the gym.

Olmedo and his daughter went to their car in the parking lot. After he secured his daughter in her carseat, Olmedo turned around and saw Harper pointing a gun at him. Olmedo lunged at Harper to get the gun away from him. At that point, Olmedo realized that Harper had shot him because he had no feeling in

2

his leg. Olmedo fell to the ground, and Harper fell to the ground and out of his wheelchair. Harper got back in his wheelchair and fled. He was later arrested a few blocks away. Olmedo was transported to the hospital where surgeons discovered two bullets in his body.

During the guilt-innocence phase of trial, the trial court admitted into evidence a certified judgment and sentence naming Joey Harper and convicting him of stalking. *See* TEX. PENAL CODE § 42.072. The document included the date of the offense and conviction, cause number, height, weight, tattoos, hair color, and eye color. It also contained facial and side profile photographs. The photographs showed a tattoo on the left cheek. Among other witnesses, the jury heard from the childcare worker at the gym. She stated that she regularly saw Harper at the gym and was familiar with him. The childcare worker viewed the exhibit and identified the person in the photographs as Harper. She also identified Harper in the courtroom.

The jury found Harper guilty of felon in possession of a weapon and aggravated assault with a deadly weapon. During the punishment phase of trial, Harper called Greg Gardner to testify. Gardner testified that Harper had been to prison for stalking and said he had personal knowledge of the facts of the case. He also testified that he met Harper in approximately 2009 and that they met after Harper had been to prison for stalking. The State presented the same judgment and

sentence for the same stalking conviction and alleged it as an enhancement to the aggravated assault with a deadly weapon conviction. The jury found the enhancement true.

## Sufficiency of the Evidence to Support Enhancement Paragraph

In one issue on appeal, Harper contends that the evidence is legally insufficient to link him to the prior conviction for stalking that was used to enhance his punishment. We disagree.

### A.    Standard of Review

Before a prior conviction may properly be used to enhance a defendant's punishment, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction. *Henry v. State*, 509 S.W.3d 915, 918 (Tex. Crim. App. 2016); *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). There is no specific document or mode of proof required to prove either element. *Henry*, 509 S.W.3d at 918; *Flowers*, 220 S.W.3d at 921. The Court of Criminal Appeals has stated:

> There is no "best evidence" rule in Texas that requires that the fact of a prior conviction be proven with any document, much less any specific document. While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means, the State may prove both of these elements in a number of different ways, including . . . documentary proof (such as a judgment) that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted. Just as there is more than one way to skin a cat, there is more than one way to prove a prior conviction.

*Flowers*, 220 S.W.3d at 921–22. "Any type of evidence, documentary or testimonial, might suffice" to prove a conviction. *Id.* at 922.

The State has the burden to prove the link between the previous conviction and defendant by putting forth independent evidence showing that the defendant is the same person named in the previous conviction. *See Beck v. State*, 719 S.W.2d 205, 210 (Tex. Crim. App. 1986); *see also Henry*, 509 S.W.3d at 920. Acceptable evidence includes admitting certified copies of a judgment and sentence and authenticated copies of Texas Department of Corrections records, including fingerprints, (commonly known as a "pen packet") that is supported by expert testimony identifying the prints as identical to known prints of the defendant. *See Paschall v. State*, 285 S.W.3d 166, 174–75 (Tex. App.—Fort Worth 2009, pet. ref'd). While that may be the preferred and most convenient way to establish a prior conviction and link it to the defendant, the State may prove these elements in several different ways, including the defendant's admission or stipulation or testimony by a person who was present when the defendant was convicted of the specified crime who can identify the defendant as that person. *Henry*, 509 S.W.3d at 920. When the accused is present in court, the factfinder may compare his appearance with documentary proof of the conviction that contains photographs or a detailed physical description of the named person. *Flowers*, 220 S.W.3d at 925.

Regardless of the type of evidentiary puzzle pieces the State offers to prove the existence of a prior conviction and its link to a defendant, the factfinder determines if the pieces fit together sufficiently to complete the puzzle. *Flowers*, 220 S.W.3d at 923; *see also Henry*, 509 S.W.3d at 919. The trier of fact must consider the evidence as a whole, as each piece of evidence may provide little meaning if considered in isolation. *Henry*, 509 S.W.3d at 919. The factfinder looks at the totality of evidence admitted concerning the prior conviction to determine (1) whether there was a prior conviction, and (2) whether the defendant was the person convicted. *Flowers*, 220 S.W.3d at 923; *see also Henry*, 509 S.W.3d at 919. "If these two elements can be found beyond a reasonable doubt, then the various pieces used to complete the puzzle are necessarily legally sufficient to prove a prior conviction." *Flowers*, 220 S.W.3d at 923.

In reviewing the legal sufficiency of the evidence presented at trial, a reviewing court must view all the evidence in the light most favorable to the State. *Villareal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009). The evidence is legally sufficient if based on "the totality of the evidence," the trier of fact could determine beyond a reasonable doubt that there was a previous conviction and that the defendant was the one convicted. *Flowers*, 220 S.W.3d at 923.

**B. Analysis**

On appeal, Harper contends that the State did not offer sufficient proof of his identity to link him to the stalking conviction because a fingerprint examiner did not testify that the fingerprints admitted in the pen packet belong to Harper. He also alleges that the pen packet contained only his name as an identifying factor. We disagree.

The State alleged in its indictment for aggravated assault that Harper had a prior felony conviction for stalking from July 19, 2013 in the 180th District Court of Harris County, Texas in cause number 1334283. The State introduced and the trial court admitted State's Exhibit 32, which is a penitentiary packet or "pen packet." A pen packet consists of records from the Texas Department of Corrections or other penal institutions regarding a person's prior convictions. State's Exhibit 32 included a certified copy of a judgment of conviction for stalking against Joey Harper in cause number 1334283 from the 180th District Court in Harris County signed on July 19, 2013. The exhibit includes the name, date of birth, sex, race, hair color, eye color, height, weight, and tattoos of the person convicted. It describes the tattoos to the left wrist, right forearm, and left cheek of the person named in the judgment. It also included headshots, taken straight on and from a profile view. The photographs show a distinct facial tattoo on the left cheek.

During trial, Harper was in the courtroom. The jury could see Harper and compare his appearance to the photographs in the pen packet. The jury could observe whether Harper had the same facial tattoos as described and photographed. The jury could also compare Harper's appearance to the description of the person in the pen packet, including name, race, hair color, eye color, age, height, and weight. *See Martin v. State*, No. 14-21-00736-CR, 2023 WL 3115779, at *7 (Tex. App.—Houston [14th Dist.] Apr. 27, 2023, no pet.) (mem. op.) (finding sufficient evidence to link defendant to prior conviction based on State ID number, name, date of birth, and personal descriptors); *see also Flowers*, 220 S.W.3d at 925 (finding sufficient evidence to link defendant to prior conviction when trial court could compare defendant in person with photograph in driver's license record and descriptors found in certified copy of judgment); *Dorsett v. State*, 396 S.W.2d 115, 116 (Tex. Crim. App. 1965) (finding sufficient evidence to link defendant to prior conviction when jury had opportunity to observe defendant and determine by comparison with description in the record, including date of birth, race, hair and eye color, weight, and height, whether defendant was same person previously convicted).

Additionally, the childcare worker from the 24 Hour Fitness testified that she had seen Harper regularly at the gym. She identified him in the courtroom and identified him as the person in the photographs in the pen packet. Finally, Gardner

8

testified that Harper had been to prison for stalking and that he had been released by the time they met. While Gardner did not know the exact year that Harper was incarcerated for stalking, his testimony did not conflict with evidence that Harper was incarcerated for stalking around 2013, and it fit the puzzle of evidence before the jury.[*] *See Henry*, 509 S.W.3d at 920 (stating that witness that testified that defendant had been convicted of offense but did not provide date of offense was insufficient to link defendant to prior conviction but could "serve as one piece of evidence to be viewed in conjunction with all other pieces").

The evidence was legally sufficient to show beyond a reasonable doubt that there was a previous conviction for stalking and that Harper had been convicted. *Flowers*, 220 S.W.3d at 923.

**Conclusion**

We affirm the judgment of the trial court.

Peter Kelly
Justice

Panel consists of Justices Kelly, Hightower, and Guerra.

Do not publish. TEX. R. APP. P. 47.2(b).

---

[*] Gardner testified that he met Harper in 2009. He also testified that when he met Harper, Harper had been released from prison for stalking. When asked if that meant he had met Harper later than 2009, he responded affirmatively.

9