02-11-244 & 245-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00244-CR

NO. 02-11-00245-CR

 


 
 
 Melvin Scott HORTON
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM County
Criminal Court No. 1 OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I.  Introduction

          Appellant
Melvin Scott Horton appeals his convictions for driving while intoxicated and
possession of marijuana under two ounces.  In a single issue, Appellant argues
that the evidence is legally and factually insufficient to support his
convictions.  We will affirm.

II.  Factual Background

A.  The
9-1-1 Caller’s Testimony

          Lonnie
Griggs testified that on November 13, 2009 at 9:05 p.m., he and his
twelve-year-old son were on their way from Mesquite to Euless for a hockey game.
 Griggs said that he was running late, and so he was driving sixty-five or seventy
miles per hour in a sixty-mile-per-hour zone.  While en route in heavy traffic,
Griggs noticed a blue truck approaching him from behind at a high rate of
speed.  After the truck passed Griggs, it swerved several times with all four
tires crossing into different driving lanes a few times and going off onto the
shoulder, nearly hitting several cars that were parked on the shoulder.  At
that point, Griggs called 9-1-1 and reported that a driver was under the
influence and was driving recklessly.  Griggs provided the dispatcher with a
description of the truck and the license plate number, continued to follow the
truck, and stayed on the line with the 9-1-1 dispatcher.  Griggs testified that
he never allowed the truck to be more than four car lengths from him and that
he maintained visual contact with the truck the entire time until the police
pulled it over.  The police also instructed Griggs to pull over, and he
provided them with his contact information.  A recording of Griggs’s 9-1-1 call
was played for the jury. 

          On
cross-examination, Griggs testified that the truck slowed down to sixty-five or
seventy miles per hour after it passed him.  Griggs could not tell whether the driver
was on the phone or texting when he swerved because the windows of the truck
were tinted. 

B.  The
Arresting Officer’s Testimony

          Officer
Brandon Zachary with the Euless Police Department testified that on November
13, 2009, he received a radio call informing him that a concerned citizen was
following a possibly intoxicated driver.  Officer Zachary was very close to the
area that was identified in the radio call and asked dispatch to have the
concerned citizen turn on his hazard lights.  The concerned citizen complied,
and from the service road, Officer Zachary could see on the freeway the concerned
citizen and the blue, full-sized Toyota Tundra pickup truck that had been
described in the radio call.  Officer Zachary saw the Toyota switch from the
outside lane to the center lane without signaling and paced him at seventy-two
miles per hour in a sixty-mile-per-hour zone.  Officer Zachary initiated a
traffic stop of the Toyota.  After Officer Zachary activated his
lights, Appellant engaged his turn signal, changed lanes properly, and came to
a stop. 

          Officer
Zachary approached the driver’s side of the vehicle and spoke to Appellant.  Officer
Zachary smelled a moderate odor of alcohol on Appellant’s breath and noticed
that his eyes “seemed a little heavy.”  Officer Zachary asked Appellant if he
had been drinking, and Appellant denied that he had consumed any alcoholic
beverage.  Later during the stop, Appellant admitted that he had consumed one
beer at the airport.[2]  Based on Appellant’s
failure to signal the lane change, his excessive speed, the report of his
erratic driving from Griggs,[3] the smell of alcohol on
Appellant’s breath, and his heavy eyes, Officer Zachary determined that he
should conduct the standard field sobriety tests (SFSTs).

          On
the horizontal gaze nystagmus (HGN) test, Appellant exhibited all six clues.  Of
the eight clues on the walk-and-turn test, Appellant exhibited two clues:  he
could not keep his balance while listening to the instructions and failed to
touch his heel to his toe three separate times during the test.  During the
one-legged-stand test, Appellant mentioned that his cowboy boots were heavy and
“something about his knees,” so Officer Zachary gave him the option to stand a
different way or to take his shoes off.  Appellant tried but said that he
ultimately could not perform the one-legged-stand test.  Due to Appellant’s
failure to complete the one-legged-stand test, Officer Zachary gave Appellant
additional tests.  Officer Zachary asked Appellant to recite the alphabet from
B to X, and after starting several different times and never getting the
sequence correct, Appellant quit.  Officer Zachary then asked Appellant to
count backwards from ninety-two to seventy-seven; Appellant counted correctly
but did not stop at seventy-seven.  At times during the tests, Appellant was
swaying.  Officer Zachary arrested Appellant for the offense of driving while
intoxicated and asked his backup, Officer Hansen, who was a drug recognition
expert, to verify the HGN test because Appellant had looked away at times
during the test. 

          Officer
Hansen repeated the HGN test on Appellant and then called for a wrecker and
started the vehicle inventory.  After looking in the center console, Officer
Hansen requested that Officer Zachary take a look in the center console. Officer
Zachary found a Shiner beer bottle that was eighty percent empty and was cool
to the touch, a “one hitter box,”[4] and a baggie containing
thirteen grams of marijuana.  Officer Zachary said that Appellant was the only
person in the vehicle that evening and that the vehicle belonged to Appellant.

          After
Officer Zachary transported Appellant to the Euless Jail, Officer Zachary
conducted a videotaped interview with Appellant.  Appellant refused to provide
a breath sample. 

          Officer
Zachary concluded based on the totality of the circumstances that Appellant had
lost the normal use of his physical faculties on November 13, 2009, due to the
introduction of alcohol and/or marijuana into his system. 

          During
cross-examination, the defense attempted to show that Appellant had not lost
the normal use of his physical and mental faculties because he had used them to
properly answer questions and to obey commands from Officer Zachary;[5]
the defense also attempted to show that Officer Zachary had not conducted the
SFSTs properly because they were conducted on a surface with a slight incline.  Officer
Zachary testified that he did not smell an odor of marijuana in the truck; but
the pipe had burnt marijuana in it, and the marijuana still had a pungent odor.
 Officer Zachary could not recall whether Appellant said that he was the only
person who had driven the truck in the days immediately preceding his arrest. 

          On
redirect examination, Officer Zachary testified that the Shiner beer was turned
over on the top of various items in the center console and that the baggie of marijuana
and the one hitter box were also on the top. 

C.  The
Back-Up Officer’s Testimony

          Officer
Hansen testified that he responded on November 13, 2009, to assist Officer
Zachary in the arrest of Appellant.  Officer Hansen arrived as Officer Zachary
was asking Appellant about where he was coming from and whether he had been
drinking.  Officer Hansen watched traffic and made sure that Appellant did not
become combative; Officer Hansen noted that Appellant was “[e]xtremely”
cooperative.  When Officer Zachary finished performing the SFSTs on Appellant,
he asked Officer Hansen to check Appellant’s eyes for nystagmus.  Officer Hansen
found six clues when he performed the HGN test on Appellant, which indicated
possible intoxication.  Appellant was thereafter placed under arrest by Officer
Zachary, and Officer Hansen called for a wrecker.

          Officer
Hansen began the vehicle inventory but stopped and went to get Officer Zachary
after finding a cool-to-the-touch, open bottle of beer; a wooden box that
contained marijuana and a marijuana pipe; and a plastic baggie of marijuana in
the center console.  Officer Zachary looked through the console, and then
Officer Hansen completed the vehicle inventory, finding nothing else related to
the intoxication. 

D.  The
Video of the Stop

          The
videotape begins with Officer Zachary’s vehicle entering the highway on an
entrance ramp.  He states that he is pulling Appellant over for changing lanes
without signaling.  After Officer Zachary activates his overhead lights,
Appellant turns on his blinker and drives a long way before pulling off the
road onto the shoulder.  Once he comes to a stop, Appellant fails to turn off
his blinker.

          After
Officer Zachary approaches Appellant’s car, the sound from the highway traffic
drowns out most of the dialog between Officer Zachary and Appellant.  Appellant
ultimately steps out of the truck, and Officer Zachary performs the HGN test
while Appellant stands on the shoulder near where the asphalt meets the grass. 
Officer Zachary spends several minutes performing the test on Appellant. 
Afterwards, Appellant says, “I had a beer at the airport and that’s it.”

          Officer
Zachary then demonstrates the walk-and-turn test.  When Appellant performs the
test, he teeters a bit and does not always put his heel to the toe on his other
foot.

          Officer
Zachary demonstrates the one-legged-stand test, after which Appellant states
that this is the first time that he has worn his boots, that they are heavy,
and that there is an incline on the road.  Officer Zachary offers for Appellant
to take off his boots and to perform the test on the part of the shoulder that
is away from the incline.  Appellant says that he is too tired to take off his
boots.  He attempts the one-legged-stand test but only holds his leg for seven
seconds.

          Officer
Zachary then asks Appellant if he knows the alphabet and asks that he recite it
from B to X.  Appellant responds with something that sounds like, “B, C, D, E,
F, G, X, G, S” and tries again with “A, C, D, E, F, G, H, F, G, H” before he
gives up.

          Officer
Zachary asks if Appellant knows how to count and asks him to count backwards from
ninety-two to seventy-seven.  Appellant complies, but he stops on seventy-six.

          Officer
Hansen repeats the HGN test on Appellant.[6]  At the completion of the
test, Officer Zachary arrests Appellant for driving while intoxicated.  Officer
Hansen initiates an inventory of the truck and then asks for Officer Zachary to
inventory the center console.  Officer Zachary returns with the eighty-percent-empty
bottle of beer and pours it out.  The recovery of the one hitter box and the baggie
of marijuana is not evident in the video.  The videotape contains very fuzzy
footage from the jail.

E.  Wife’s
Testimony

          Angela
Horton, who was married to Appellant, testified that she had seen “the billing”
and that her husband was talking on the phone to his brother when he was
stopped on November 13, 2009.  Angela testified that Appellant was driving home
from the airport that evening after returning from a business trip, but she
could not recall where he had flown from because he traveled a lot.  Angela
said that she drove Appellant’s truck on occasion and that the marijuana that
was found in the truck did not belong to Appellant.  Angela pleaded the Fifth
Amendment when asked whom the marijuana belonged to.  Angela did not know
whether Appellant had drunk any alcoholic beverage on the evening in question.

F.  Trial
Outcome

          After
hearing the testimony above, the jury found Appellant guilty of both offenses.  The
trial court thereafter sentenced Appellant to ninety days’ confinement,
suspended the sentence, placed Appellant on community supervision for twelve
months, and assessed a $350 fine in the possession case and sentenced Appellant
to ninety days’ confinement, suspended the sentence, placed Appellant on
community supervision for twenty-four months, and assessed a $550 fine in the
driving while intoxicated case.  These appeals followed.

III.  Standard
of Review

          In
our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Isassi v.
State, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

          This
standard gives full play to the responsibility of the trier of fact to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.  Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; Isassi, 330 S.W.3d at 638.  The trier of
fact is the sole judge of the weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); Brown v. State, 270
S.W.3d 564, 568 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 2075
(2009).  Thus, when performing an evidentiary sufficiency review, we may not
re-evaluate the weight and credibility of the evidence and substitute our
judgment for that of the factfinder.  Williams v. State, 235 S.W.3d 742,
750 (Tex. Crim. App. 2007).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@  Hooper v. State, 214 S.W.3d 9,
16–17 (Tex. Crim. App. 2007).  We must presume that the factfinder resolved any
conflicting inferences in favor of the verdict and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Isassi, 330 S.W.3d at 638.

IV.  Legally Sufficient Evidence
to Support Convictions

          In
a single issue, Appellant argues that the evidence is legally and factually insufficient
to support his convictions for driving while intoxicated and possession of
marijuana.  The court of criminal appeals has held that there is no meaningful
distinction between the legal sufficiency standard and the factual sufficiency
standard.  Brooks v. State, 323 S.W.3d 893, 895, 912 (Tex. Crim. App.
2010) (overruling Clewis v. State, 922 S.W.2d 126, 131–32 (Tex. Crim.
App. 1996)).  Thus, the Jackson standard, which is set forth above, is
the “only standard that a reviewing court should apply in determining whether
the evidence is sufficient to support each element of a criminal offense that
the State is required to prove beyond a reasonable doubt.”  Id. at 912.

A.  Sufficient
Evidence to Prove Intoxication

          Appellant
argues that the evidence is legally insufficient to prove that he was
intoxicated.  Appellant contends that the evidence is insufficient to show that
he was intoxicated because the officer did not testify that the odor of alcohol
on Appellant was strong, that he had slurred speech, that he had stumbled, or that
he had difficulty standing or answering the officer’s questions or producing
the documents the officer requested.  Appellant also argues that despite
Officer Zachary’s testimony that Appellant’s performance on the SFSTs was
unsatisfactory, the videotape of Appellant’s performance establishes otherwise.

          Under
the penal code, “intoxicated” means not having the normal use of mental or
physical faculties by reason of the introduction of alcohol, a controlled
substance, a drug, a dangerous drug, a combination of two or more of those
substances, or any other substance into the body.  Tex. Penal Code Ann. § 49.01(2)(A)
(West 2011).  As a general rule, factually-based testimony of an officer that a
person is intoxicated provides sufficient evidence to establish the element of
intoxication for the offense of DWI.  See Annis v. State, 578 S.W.2d
406, 407 (Tex. Crim. App. 1979) (reasoning that an officer’s testimony that a
person was intoxicated provided sufficient evidence to establish the element of
intoxication); see also Henderson v. State, 29 S.W.3d 616, 622 (Tex.
App.—Houston [1st Dist.] 2000, pet. ref’d) (stating that the testimony of a
police officer that an individual is intoxicated is probative evidence of
intoxication).  Additionally, intoxication may be proven by a combination of
individual symptoms that when taken individually do not necessarily prove
intoxication.  See Cotton v. State, 686 S.W.2d 140, 143 n.3 (Tex. Crim.
App. 1985) (noting that evidence of intoxication may include, among other
things, slurred speech, bloodshot eyes, odor of alcohol, unsteady balance, and
staggered gait).  And in addition to an officer’s testimony, a jury may
consider video of a defendant’s performance on field-sobriety tests as direct
evidence of intoxication.  Paschall v. State, 285 S.W.3d 166, 177 (Tex.
App.—Fort Worth 2009, pet. ref’d).

          In
this case, a 9-1-1 call was received from a concerned citizen who suspected
that Appellant was intoxicated because of his reckless driving that included
speeding and almost hitting parked cars.  Officer Zachary witnessed Appellant
switch lanes without signaling and paced him at seventy-two miles per hour in a
sixty-mile-per-hour zone.  After Officer Zachary stopped Appellant, he noticed
a moderate odor of alcohol on Appellant’s breath and described Appellant’s eyes
as heavy.  Appellant admitted to drinking a beer at the airport.  Both Officer
Zachary and Officer Hansen testified that Appellant exhibited six of six clues
on the HGN test, indicating intoxication.  Officer Zachary testified that Appellant
also exhibited two of eight clues on the walk-and-turn test, failed to complete
the one-legged-stand test, performed poorly and quit the alphabet test, and failed
to stop on seventy-seven when counting backwards from ninety-two.  During the SFSTs,
Appellant swayed.  The officers also found evidence of alcohol consumption in Appellant’s
vehicle—an eighty percent empty beer bottle that was cold to the touch.  The
officers also could not rule out that Appellant was intoxicated by reason of the
introduction of marijuana or a combination of alcohol and marijuana into his
body because a one hitter box was found with burnt marijuana in it in the same
center console where the beer bottle was found.  At the jail, Appellant refused
to provide a breath sample.  The jury, however, was not forced to rely solely
on the officers’ testimony; the video recording of Appellant’s detention and performance
of SFSTs corroborated the officers’ testimony that Appellant was intoxicated. 
Based on this evidence, a rational trier of fact could have found the essential
elements of DWI beyond a reasonable doubt.  See Jackson, 443 U.S. at
319, 99 S. Ct. at 2789.  Having carefully reviewed the evidence under the
applicable standard, we hold that the evidence is legally sufficient to support
Appellant’s conviction for DWI.  See id.; Tubb v. State, No.
02-08-00400-CR, 2009 WL 3720166, at *2 (Tex. App.—Fort Worth Nov. 5, 2009, pet.
ref’d) (mem. op., not designated for publication) (holding evidence legally
sufficient to support DWI conviction because evidence included, among other
things, investigating officers’ testimony that appellant was intoxicated, that
appellant had failed the one-legged-stand test and walk-and-turn test, that
appellant smelled of alcohol, that appellant admitted to drinking alcohol, that
an empty beer container was found, and video corroborating the officers’
testimony); Dukes v. State, No. 02-07-00053-CR, 2008 WL 902787, at *3–4
(Tex. App.—Fort Worth Apr. 3, 2008, no pet.) (mem. op., not designated for
publication) (holding evidence legally sufficient to support DWI conviction
because evidence included, among other things, that appellant smelled of
alcohol, that appellant’s eyes were heavy, that appellant admitted to drinking
two beers earlier in the day, that appellant failed HGN test and walk-and-turn
test and refused to perform one-legged-stand, that a three-fourths empty beer
can that was cool to the touch was found under driver’s seat, and that
appellant refused to provide a breath or blood sample).  Thus, we overrule the
portion of Appellant’s issue complaining of his DWI conviction.

B.  Evidence
Sufficient to Prove Possession

          Appellant
also argues in his sole issue that the evidence is legally insufficient to
support his conviction for possession of marijuana.  Appellant contends that
his mere presence at the scene where the drugs were found or his proximity to
the drugs is insufficient to establish possession. 

          An individual commits the offense of possession
of marijuana if he “knowingly or intentionally possesses a usable quantity of
mari[j]uana” in the amount of “two ounces or less.”  Tex. Health & Safety
Code Ann. § 481.121(a), (b)(1) (West 2010).  To prove possession, the State
must prove that the accused (1) exercised actual care, custody, control, or
management over the substance and (2) knew that the matter possessed was a
controlled substance.  Tex. Penal Code Ann. § 1.07(39) (West Supp. 2011); Evans
v. State, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006).  Possession is a
“voluntary act if the possessor knowingly obtains or receives the thing
possessed or is aware of his control of the thing for a sufficient time to
permit him to terminate his control.”  Tex. Penal Code Ann. § 6.01(b) (West
2011). 

          If
the contraband is not found on the accused’s person, independent facts and
circumstances may “link” the accused to the contraband such that it may be
justifiably concluded that the accused knowingly possessed the contraband. Evans,
202 S.W.3d at 161–62; Roberson v. State, 80 S.W.3d 730, 735 (Tex.
App.—Houston [1st Dist.] 2002, pet. ref’d).  Among the many possible factors
that we may consider in assessing the link between a defendant and contraband
are whether the narcotics were (1) in plain view; (2) conveniently accessible
to the accused; (3) in a place owned, rented, possessed or controlled by the
accused; (4) in a car driven by the accused; (5) found on the same side of the
car as the accused; or (6) found in an enclosed space; and whether (7) the odor
of narcotics was present; (8) drug paraphernalia was in view of or found on the
accused; (9) the accused’s conduct indicated a consciousness of guilt (e.g.,
furtive gestures, flight, conflicting statements); (10) the accused had a
special relationship to the drug; (11) the accused possessed other contraband
or narcotics when arrested; (12) the accused was under the influence of
narcotics when arrested; (13) affirmative statements connected the accused to
the drug; (14) the accused’s presence; and (15) the accused was found with a
large amount of cash.  Evans, 202 S.W.3d at 162 n.12; Roberson,
80 S.W.3d at 735 n.2; Villegas v. State, 871 S.W.2d 894, 897 (Tex.
App.—Houston [1st Dist.] 1994, pet. ref’d).  The number of linking factors
present is not as important as the “logical force” they create to prove that an
offense was committed.  Roberson, 80 S.W.3d at 735. The absence of
various links does not constitute evidence of innocence to be weighed against the links
present.  Hernandez v. State, 538 S.W.2d 127, 131 (Tex. Crim. App.
1976); James v. State, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st
Dist.] 2008, pet. ref’d).

          Here,
viewing all of the evidence in the light most favorable to the verdict, Appellant
was the driver and the sole occupant of the vehicle in which the baggie of
marijuana and the one hitter box, which contained a pipe with burnt marijuana that
had a pungent odor, was found in close physical proximity to him.  Appellant
was on his way home from the airport after returning from a business trip, thus
making it unlikely that his wife had recently driven the vehicle.  The baggie
of marijuana and the one hitter box were found near the top of the console next
to the cool-to-the-touch bottle of beer that was eighty percent empty, making
it unlikely that Appellant was unaware of the drugs because he admitted having
drunk a beer.  Moreover, Appellant showed signs of intoxication, including heavy
eyes and swaying during the SFSTs, which he failed.  We conclude based on the
logical force created by these links that a rational trier of fact could have
found beyond a reasonable doubt that Horton possessed the marijuana in the
console.  See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Harmond v.
State, 960 S.W.2d 404, 406–07 (Tex. App.—Houston [1st Dist.] 1998, no pet.)
(holding evidence legally sufficient to support conviction for possession of
cocaine because appellant was alone in car with drug paraphernalia in plain
view and easily accessible to him); Laws v. State, No. 01-09-00431-CR,
2010 WL 2133925, at *5 (Tex. App.—Houston [1st Dist.] May 27, 2010, no pet.)
(mem. op., not designated for publication) (holding evidence legally sufficient
to support conviction for possession of marijuana because appellant was driver
and sole passenger in car where plastic bag containing marijuana was found in
plain view on passenger’s seat); Williams v. State, No. 14-01-01250-CR,
2002 WL 31426293, at *3 (Tex. App.—Houston [14th Dist.] Oct. 10, 2002, no pet.)
(not designated for publication) (holding evidence legally sufficient to
support conviction for possession of controlled substance because evidence
affirmatively linked appellant to PCP; appellant was alone when stopped and
hands were near console of car where contraband was found); see also Gilliam
v. State, No. 12-10-00136-CR, 2011 WL 2222137, at *4 (Tex. App.—Tyler June
8, 2011, no pet.) (mem. op., not designated for publication) (holding evidence sufficient
to show that appellant violated a condition of his community supervision based
on his simple possession of marijuana while he was passenger in car even though
driver signed affidavit claiming ownership of marijuana and stating that
appellant had no knowledge of it).  Accordingly, we hold that the evidence is
legally sufficient to support Appellant’s conviction for possession of
marijuana, and we overrule the portion of Appellant’s issue complaining of his possession
of marijuana conviction.

V.  Conclusion

          Having
overruled Appellant’s sole issue, we affirm the trial court’s judgments.

 

SUE WALKER
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and WALKER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  January 19, 2012









[1]See Tex. R. App. P. 47.4.





[2]Officer Zachary could not
recall for sure but thought that Appellant had mentioned that he was on his way
home from the airport.





[3]Officer Zachary did not
recall Appellant’s mentioning anything about texting or being on his cell
phone.





[4]Officer Zachary explained
that a “one hitter box” is the street name for a little wooden box in which one
can keep a small amount of marijuana.  A portion of the top of the box can be
moved, and a small pipe “pops out that you can smoke marijuana through.”





[5]Prior to the SFSTs, Appellant
identified himself using normal speech, told Officer Zachary where he was
coming from, produced his driver’s license, stepped out of the vehicle, walked
to the back of the truck, stood on the designated spot, and responded that he
had not endured any recent head trauma.





[6]Throughout the SFSTs, it
is not easy to tell whether Appellant is swaying because he is facing the
highway.  Officer Hansen, however, stood in the grass behind Appellant and had
the best view of whether Appellant was swaying.