

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00244-CR
## NO. 02-11-00245-CR

MELVIN SCOTT HORTON                                      APPELLANT

V.

THE STATE OF TEXAS                                            STATE

----------

## FROM COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Melvin Scott Horton appeals his convictions for driving while intoxicated and possession of marijuana under two ounces. In a single issue, Appellant argues that the evidence is legally and factually insufficient to support his convictions. We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. FACTUAL BACKGROUND

### A. The 9-1-1 Caller's Testimony

Lonnie Griggs testified that on November 13, 2009 at 9:05 p.m., he and his twelve-year-old son were on their way from Mesquite to Euless for a hockey game. Griggs said that he was running late, and so he was driving sixty-five or seventy miles per hour in a sixty-mile-per-hour zone. While en route in heavy traffic, Griggs noticed a blue truck approaching him from behind at a high rate of speed. After the truck passed Griggs, it swerved several times with all four tires crossing into different driving lanes a few times and going off onto the shoulder, nearly hitting several cars that were parked on the shoulder. At that point, Griggs called 9-1-1 and reported that a driver was under the influence and was driving recklessly. Griggs provided the dispatcher with a description of the truck and the license plate number, continued to follow the truck, and stayed on the line with the 9-1-1 dispatcher. Griggs testified that he never allowed the truck to be more than four car lengths from him and that he maintained visual contact with the truck the entire time until the police pulled it over. The police also instructed Griggs to pull over, and he provided them with his contact information. A recording of Griggs's 9-1-1 call was played for the jury.

On cross-examination, Griggs testified that the truck slowed down to sixty-five or seventy miles per hour after it passed him. Griggs could not tell whether the driver was on the phone or texting when he swerved because the windows of the truck were tinted.

## B. The Arresting Officer's Testimony

Officer Brandon Zachary with the Euless Police Department testified that on November 13, 2009, he received a radio call informing him that a concerned citizen was following a possibly intoxicated driver. Officer Zachary was very close to the area that was identified in the radio call and asked dispatch to have the concerned citizen turn on his hazard lights. The concerned citizen complied, and from the service road, Officer Zachary could see on the freeway the concerned citizen and the blue, full-sized Toyota Tundra pickup truck that had been described in the radio call. Officer Zachary saw the Toyota switch from the outside lane to the center lane without signaling and paced him at seventy-two miles per hour in a sixty-mile-per-hour zone. Officer Zachary initiated a traffic stop of the Toyota. After Officer Zachary activated his lights, Appellant engaged his turn signal, changed lanes properly, and came to a stop.

Officer Zachary approached the driver's side of the vehicle and spoke to Appellant. Officer Zachary smelled a moderate odor of alcohol on Appellant's breath and noticed that his eyes "seemed a little heavy." Officer Zachary asked Appellant if he had been drinking, and Appellant denied that he had consumed any alcoholic beverage. Later during the stop, Appellant admitted that he had consumed one beer at the airport.[2] Based on Appellant's failure to signal the

---

[2]Officer Zachary could not recall for sure but thought that Appellant had mentioned that he was on his way home from the airport.

3

lane change, his excessive speed, the report of his erratic driving from Griggs,[3] the smell of alcohol on Appellant's breath, and his heavy eyes, Officer Zachary determined that he should conduct the standard field sobriety tests (SFSTs).

On the horizontal gaze nystagmus (HGN) test, Appellant exhibited all six clues. Of the eight clues on the walk-and-turn test, Appellant exhibited two clues: he could not keep his balance while listening to the instructions and failed to touch his heel to his toe three separate times during the test. During the one-legged-stand test, Appellant mentioned that his cowboy boots were heavy and "something about his knees," so Officer Zachary gave him the option to stand a different way or to take his shoes off. Appellant tried but said that he ultimately could not perform the one-legged-stand test. Due to Appellant's failure to complete the one-legged-stand test, Officer Zachary gave Appellant additional tests. Officer Zachary asked Appellant to recite the alphabet from B to X, and after starting several different times and never getting the sequence correct, Appellant quit. Officer Zachary then asked Appellant to count backwards from ninety-two to seventy-seven; Appellant counted correctly but did not stop at seventy-seven. At times during the tests, Appellant was swaying. Officer Zachary arrested Appellant for the offense of driving while intoxicated and asked his backup, Officer Hansen, who was a drug recognition expert, to verify the HGN test because Appellant had looked away at times during the test.

---

[3]Officer Zachary did not recall Appellant's mentioning anything about texting or being on his cell phone.

4

Officer Hansen repeated the HGN test on Appellant and then called for a wrecker and started the vehicle inventory. After looking in the center console, Officer Hansen requested that Officer Zachary take a look in the center console. Officer Zachary found a Shiner beer bottle that was eighty percent empty and was cool to the touch, a "one hitter box,"[4] and a baggie containing thirteen grams of marijuana. Officer Zachary said that Appellant was the only person in the vehicle that evening and that the vehicle belonged to Appellant.

After Officer Zachary transported Appellant to the Euless Jail, Officer Zachary conducted a videotaped interview with Appellant. Appellant refused to provide a breath sample.

Officer Zachary concluded based on the totality of the circumstances that Appellant had lost the normal use of his physical faculties on November 13, 2009, due to the introduction of alcohol and/or marijuana into his system.

During cross-examination, the defense attempted to show that Appellant had not lost the normal use of his physical and mental faculties because he had used them to properly answer questions and to obey commands from Officer Zachary;[5] the defense also attempted to show that Officer Zachary had not

---

[4]Officer Zachary explained that a "one hitter box" is the street name for a little wooden box in which one can keep a small amount of marijuana. A portion of the top of the box can be moved, and a small pipe "pops out that you can smoke marijuana through."

[5]Prior to the SFSTs, Appellant identified himself using normal speech, told Officer Zachary where he was coming from, produced his driver's license, stepped out of the vehicle, walked to the back of the truck, stood on the

5

conducted the SFSTs properly because they were conducted on a surface with a slight incline. Officer Zachary testified that he did not smell an odor of marijuana in the truck; but the pipe had burnt marijuana in it, and the marijuana still had a pungent odor. Officer Zachary could not recall whether Appellant said that he was the only person who had driven the truck in the days immediately preceding his arrest.

On redirect examination, Officer Zachary testified that the Shiner beer was turned over on the top of various items in the center console and that the baggie of marijuana and the one hitter box were also on the top.

### C. The Back-Up Officer's Testimony

Officer Hansen testified that he responded on November 13, 2009, to assist Officer Zachary in the arrest of Appellant. Officer Hansen arrived as Officer Zachary was asking Appellant about where he was coming from and whether he had been drinking. Officer Hansen watched traffic and made sure that Appellant did not become combative; Officer Hansen noted that Appellant was "[e]xtremely" cooperative. When Officer Zachary finished performing the SFSTs on Appellant, he asked Officer Hansen to check Appellant's eyes for nystagmus. Officer Hansen found six clues when he performed the HGN test on Appellant, which indicated possible intoxication. Appellant was thereafter placed under arrest by Officer Zachary, and Officer Hansen called for a wrecker.

designated spot, and responded that he had not endured any recent head trauma.

6

Officer Hansen began the vehicle inventory but stopped and went to get Officer Zachary after finding a cool-to-the-touch, open bottle of beer; a wooden box that contained marijuana and a marijuana pipe; and a plastic baggie of marijuana in the center console. Officer Zachary looked through the console, and then Officer Hansen completed the vehicle inventory, finding nothing else related to the intoxication.

### D. The Video of the Stop

The videotape begins with Officer Zachary's vehicle entering the highway on an entrance ramp. He states that he is pulling Appellant over for changing lanes without signaling. After Officer Zachary activates his overhead lights, Appellant turns on his blinker and drives a long way before pulling off the road onto the shoulder. Once he comes to a stop, Appellant fails to turn off his blinker.

After Officer Zachary approaches Appellant's car, the sound from the highway traffic drowns out most of the dialog between Officer Zachary and Appellant. Appellant ultimately steps out of the truck, and Officer Zachary performs the HGN test while Appellant stands on the shoulder near where the asphalt meets the grass. Officer Zachary spends several minutes performing the test on Appellant. Afterwards, Appellant says, "I had a beer at the airport and that's it."

Officer Zachary then demonstrates the walk-and-turn test. When Appellant performs the test, he teeters a bit and does not always put his heel to the toe on his other foot.

Officer Zachary demonstrates the one-legged-stand test, after which Appellant states that this is the first time that he has worn his boots, that they are heavy, and that there is an incline on the road. Officer Zachary offers for Appellant to take off his boots and to perform the test on the part of the shoulder that is away from the incline. Appellant says that he is too tired to take off his boots. He attempts the one-legged-stand test but only holds his leg for seven seconds.

Officer Zachary then asks Appellant if he knows the alphabet and asks that he recite it from B to X. Appellant responds with something that sounds like, "B, C, D, E, F, G, X, G, S" and tries again with "A, C, D, E, F, G, H, F, G, H" before he gives up.

Officer Zachary asks if Appellant knows how to count and asks him to count backwards from ninety-two to seventy-seven. Appellant complies, but he stops on seventy-six.

Officer Hansen repeats the HGN test on Appellant.[6] At the completion of the test, Officer Zachary arrests Appellant for driving while intoxicated. Officer

---

[6]Throughout the SFSTs, it is not easy to tell whether Appellant is swaying because he is facing the highway. Officer Hansen, however, stood in the grass behind Appellant and had the best view of whether Appellant was swaying.

Hansen initiates an inventory of the truck and then asks for Officer Zachary to inventory the center console. Officer Zachary returns with the eighty-percent-empty bottle of beer and pours it out. The recovery of the one hitter box and the baggie of marijuana is not evident in the video. The videotape contains very fuzzy footage from the jail.

### E. Wife's Testimony

Angela Horton, who was married to Appellant, testified that she had seen "the billing" and that her husband was talking on the phone to his brother when he was stopped on November 13, 2009. Angela testified that Appellant was driving home from the airport that evening after returning from a business trip, but she could not recall where he had flown from because he traveled a lot. Angela said that she drove Appellant's truck on occasion and that the marijuana that was found in the truck did not belong to Appellant. Angela pleaded the Fifth Amendment when asked whom the marijuana belonged to. Angela did not know whether Appellant had drunk any alcoholic beverage on the evening in question.

### F. Trial Outcome

After hearing the testimony above, the jury found Appellant guilty of both offenses. The trial court thereafter sentenced Appellant to ninety days' confinement, suspended the sentence, placed Appellant on community supervision for twelve months, and assessed a $350 fine in the possession case and sentenced Appellant to ninety days' confinement, suspended the sentence, placed Appellant on community supervision for twenty-four months, and

assessed a $550 fine in the driving while intoxicated case. These appeals followed.

### III. STANDARD OF REVIEW

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Isassi*, 330 S.W.3d at 638. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We

10

must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Isassi*, 330 S.W.3d at 638.

## IV. LEGALLY SUFFICIENT EVIDENCE TO SUPPORT CONVICTIONS

In a single issue, Appellant argues that the evidence is legally and factually insufficient to support his convictions for driving while intoxicated and possession of marijuana. The court of criminal appeals has held that there is no meaningful distinction between the legal sufficiency standard and the factual sufficiency standard. *Brooks v. State*, 323 S.W.3d 893, 895, 912 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)). Thus, the *Jackson* standard, which is set forth above, is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Id.* at 912.

### A. Sufficient Evidence to Prove Intoxication

Appellant argues that the evidence is legally insufficient to prove that he was intoxicated. Appellant contends that the evidence is insufficient to show that he was intoxicated because the officer did not testify that the odor of alcohol on Appellant was strong, that he had slurred speech, that he had stumbled, or that he had difficulty standing or answering the officer's questions or producing the documents the officer requested. Appellant also argues that despite Officer

11

Zachary's testimony that Appellant's performance on the SFSTs was unsatisfactory, the videotape of Appellant's performance establishes otherwise.

Under the penal code, "intoxicated" means not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body. Tex. Penal Code Ann. § 49.01(2)(A) (West 2011). As a general rule, factually-based testimony of an officer that a person is intoxicated provides sufficient evidence to establish the element of intoxication for the offense of DWI. *See Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979) (reasoning that an officer's testimony that a person was intoxicated provided sufficient evidence to establish the element of intoxication); *see also Henderson v. State*, 29 S.W.3d 616, 622 (Tex. App.— Houston [1st Dist.] 2000, pet. ref'd) (stating that the testimony of a police officer that an individual is intoxicated is probative evidence of intoxication). Additionally, intoxication may be proven by a combination of individual symptoms that when taken individually do not necessarily prove intoxication. *See Cotton v. State*, 686 S.W.2d 140, 143 n.3 (Tex. Crim. App. 1985) (noting that evidence of intoxication may include, among other things, slurred speech, bloodshot eyes, odor of alcohol, unsteady balance, and staggered gait). And in addition to an officer's testimony, a jury may consider video of a defendant's performance on field-sobriety tests as direct evidence of intoxication. *Paschall v. State*, 285 S.W.3d 166, 177 (Tex. App.—Fort Worth 2009, pet. ref'd).

12

In this case, a 9-1-1 call was received from a concerned citizen who suspected that Appellant was intoxicated because of his reckless driving that included speeding and almost hitting parked cars. Officer Zachary witnessed Appellant switch lanes without signaling and paced him at seventy-two miles per hour in a sixty-mile-per-hour zone. After Officer Zachary stopped Appellant, he noticed a moderate odor of alcohol on Appellant's breath and described Appellant's eyes as heavy. Appellant admitted to drinking a beer at the airport. Both Officer Zachary and Officer Hansen testified that Appellant exhibited six of six clues on the HGN test, indicating intoxication. Officer Zachary testified that Appellant also exhibited two of eight clues on the walk-and-turn test, failed to complete the one-legged-stand test, performed poorly and quit the alphabet test, and failed to stop on seventy-seven when counting backwards from ninety-two. During the SFSTs, Appellant swayed. The officers also found evidence of alcohol consumption in Appellant's vehicle—an eighty percent empty beer bottle that was cold to the touch. The officers also could not rule out that Appellant was intoxicated by reason of the introduction of marijuana or a combination of alcohol and marijuana into his body because a one hitter box was found with burnt marijuana in it in the same center console where the beer bottle was found. At the jail, Appellant refused to provide a breath sample. The jury, however, was not forced to rely solely on the officers' testimony; the video recording of Appellant's detention and performance of SFSTs corroborated the officers' testimony that Appellant was intoxicated. Based on this evidence, a rational trier

13

of fact could have found the essential elements of DWI beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. Having carefully reviewed the evidence under the applicable standard, we hold that the evidence is legally sufficient to support Appellant's conviction for DWI. *See id.*; *Tubb v. State*, No. 02-08-00400-CR, 2009 WL 3720166, at *2 (Tex. App.—Fort Worth Nov. 5, 2009, pet. ref'd) (mem. op., not designated for publication) (holding evidence legally sufficient to support DWI conviction because evidence included, among other things, investigating officers' testimony that appellant was intoxicated, that appellant had failed the one-legged-stand test and walk-and-turn test, that appellant smelled of alcohol, that appellant admitted to drinking alcohol, that an empty beer container was found, and video corroborating the officers' testimony); *Dukes v. State*, No. 02-07-00053-CR, 2008 WL 902787, at *3–4 (Tex. App.—Fort Worth Apr. 3, 2008, no pet.) (mem. op., not designated for publication) (holding evidence legally sufficient to support DWI conviction because evidence included, among other things, that appellant smelled of alcohol, that appellant's eyes were heavy, that appellant admitted to drinking two beers earlier in the day, that appellant failed HGN test and walk-and-turn test and refused to perform one-legged-stand, that a three-fourths empty beer can that was cool to the touch was found under driver's seat, and that appellant refused to provide a breath or blood sample). Thus, we overrule the portion of Appellant's issue complaining of his DWI conviction.

## B. Evidence Sufficient to Prove Possession

14

Appellant also argues in his sole issue that the evidence is legally insufficient to support his conviction for possession of marijuana. Appellant contends that his mere presence at the scene where the drugs were found or his proximity to the drugs is insufficient to establish possession.

An individual commits the offense of possession of marijuana if he "knowingly or intentionally possesses a usable quantity of mari[j]uana" in the amount of "two ounces or less." Tex. Health & Safety Code Ann. § 481.121(a), (b)(1) (West 2010). To prove possession, the State must prove that the accused (1) exercised actual care, custody, control, or management over the substance and (2) knew that the matter possessed was a controlled substance. Tex. Penal Code Ann. § 1.07(39) (West Supp. 2011); *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). Possession is a "voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." Tex. Penal Code Ann. § 6.01(b) (West 2011).

If the contraband is not found on the accused's person, independent facts and circumstances may "link" the accused to the contraband such that it may be justifiably concluded that the accused knowingly possessed the contraband. *Evans,* 202 S.W.3d at 161–62; *Roberson v. State*, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). Among the many possible factors that we may consider in assessing the link between a defendant and contraband are whether the narcotics were (1) in plain view; (2) conveniently accessible to

15

the accused; (3) in a place owned, rented, possessed or controlled by the accused; (4) in a car driven by the accused; (5) found on the same side of the car as the accused; or (6) found in an enclosed space; and whether (7) the odor of narcotics was present; (8) drug paraphernalia was in view of or found on the accused; (9) the accused's conduct indicated a consciousness of guilt (e.g., furtive gestures, flight, conflicting statements); (10) the accused had a special relationship to the drug; (11) the accused possessed other contraband or narcotics when arrested; (12) the accused was under the influence of narcotics when arrested; (13) affirmative statements connected the accused to the drug; (14) the accused's presence; and (15) the accused was found with a large amount of cash. *Evans*, 202 S.W.3d at 162 n.12; *Roberson*, 80 S.W.3d at 735 n.2; *Villegas v. State*, 871 S.W.2d 894, 897 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). The number of linking factors present is not as important as the "logical force" they create to prove that an offense was committed. *Roberson*, 80 S.W.3d at 735. The absence of various links does not constitute evidence of innocence to be weighed against the links present. *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976); *James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).

Here, viewing all of the evidence in the light most favorable to the verdict, Appellant was the driver and the sole occupant of the vehicle in which the baggie of marijuana and the one hitter box, which contained a pipe with burnt marijuana that had a pungent odor, was found in close physical proximity to him. Appellant

16

was on his way home from the airport after returning from a business trip, thus making it unlikely that his wife had recently driven the vehicle. The baggie of marijuana and the one hitter box were found near the top of the console next to the cool-to-the-touch bottle of beer that was eighty percent empty, making it unlikely that Appellant was unaware of the drugs because he admitted having drunk a beer. Moreover, Appellant showed signs of intoxication, including heavy eyes and swaying during the SFSTs, which he failed. We conclude based on the logical force created by these links that a rational trier of fact could have found beyond a reasonable doubt that Horton possessed the marijuana in the console. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harmond v. State*, 960 S.W.2d 404, 406–07 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (holding evidence legally sufficient to support conviction for possession of cocaine because appellant was alone in car with drug paraphernalia in plain view and easily accessible to him); *Laws v. State*, No. 01-09-00431-CR, 2010 WL 2133925, at *5 (Tex. App.—Houston [1st Dist.] May 27, 2010, no pet.) (mem. op., not designated for publication) (holding evidence legally sufficient to support conviction for possession of marijuana because appellant was driver and sole passenger in car where plastic bag containing marijuana was found in plain view on passenger's seat); *Williams v. State*, No. 14-01-01250-CR, 2002 WL 31426293, at *3 (Tex. App.—Houston [14th Dist.] Oct. 10, 2002, no pet.) (not designated for publication) (holding evidence legally sufficient to support conviction for possession of controlled substance because evidence affirmatively linked

appellant to PCP; appellant was alone when stopped and hands were near console of car where contraband was found); *see also Gilliam v. State*, No. 12-10-00136-CR, 2011 WL 2222137, at *4 (Tex. App.—Tyler June 8, 2011, no pet.) (mem. op., not designated for publication) (holding evidence sufficient to show that appellant violated a condition of his community supervision based on his simple possession of marijuana while he was passenger in car even though driver signed affidavit claiming ownership of marijuana and stating that appellant had no knowledge of it).   Accordingly, we hold that the evidence is legally sufficient to support Appellant's conviction for possession of marijuana, and we overrule the portion of Appellant's issue complaining of his possession of marijuana conviction.

## V. CONCLUSION

Having overruled Appellant's sole issue, we affirm the trial court's judgments.

SUE WALKER
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 19, 2012

18